**8202**

LOUISIANA ABSTRACT AND TITLE GUARANTEE CO.

vs

No. 8202

ROBERT WERK

March 13th, 1922.

Circuit of Appeal,
Parish of Orleans
FILED MAR 3/22

LOUISIANA ABSTRACT AND TITLE GUARANTEE CO.

VS

ROBERT WERK,
  Appellant.

No. 8202

CHARLES F. CLAIBORNE, JUDGE.

  This is a suit to recover an amount which the defendant promised to pay to the plaintiff for issuing a title guarantee bond on his property.

  The plaintiff alleged that by a written proposition dated November 10th, 1916, it offered to enter into a contract with the defendant, represented by R. E. E. De Montzulin, acting as his agent, to issue a title guarantee bond on a tract of land known as the Leland University Tract, belonging to the defendant subject to certain conditions precedent and requirements fully set forth in said proposition - for the price of $500.00. That on November 13th, 1916, by an additional writing the price was reduced to $400; that, as thus amended, the proposition was accepted by the defendant in the following words written by him on the bottom of the offer:

   "I hereby accept the above proposal.

     Signed  Robt Werk";

petitioner further averred

   "that it discharged all of its obligations under the contract made between the plaintiff and the defendant; that the guarantee was in due course issued by petitioner to the defendant, who is in possession thereof but who now refuses to pay petitioner's bill".

   The defense is

  1o that the plaintiff had obligated itself to pay De Montzulin, defendant's agent, a certain commission of the price to be paid by the defendant for plaintiff's guarantee,

330

which plaintiff cannot recover, as any rebate promised by plaintiff must inure to the benefit of defendant.

2o  That after accepting the proposition on November 13th, 1916 he

"heard nothing more about the matter; no sale was ever made by the said De Montzulin, and he considered the agreement at an end until he received from the plaintiff an alleged Bond or guarantee of title, though dated May 2d, 1917, but not delivered to him until November 19th, 1918, nearly two years after the agreement was made; that said Bond is now of no use to him as he notified the plaintiff and returned the bond to the plaintiff, and the plaintiff having returned it again to him, he herewith files it and tenders it back to the plaintiff".

There was judgment for plaintiff and the defendant has appealed.

Io  The evidence is that the plaintiff allowed all real estate dealers a percentage or commission on the business procured by them. But this is no concern of the defendant. He quotes the elementary rule that the agent must credit the principal with whatever profits he receives in the execution of his mandate. 108 Ills. 39; Succn. of Cordeville, 24 A. 321; Succn. of Ibos, 144 La. 818; See also Story in Agency § 207; 2 C. J. 697; 1 Domat p 364 § 8; C. N. 1993; such is also the law of Louisiana; C. C. 3005 (2974); 128 La. 399; 22 A. 599; 16 A. 241; 1 A. & E. Enc. Law 1072.

But in all the cases quoted by the defendant the agents were claiming from their principals sums of money which they had not paid out, in full, and in which they neglected to credit their principals with rebates or other reductions allowed to them. If De Montzulin had paid the Guarantee Co. $300 and he was claiming $400 from the defendant, these authorities would apply, but not otherwise.

331

IIᵒ It is not denied that plaintiff fulfilled all its obligations under the contract. The only defense is, that although the bond is dated May 2d, 1917 it was tendered to defendant only on November 19th, 1918, eighteen months later. The fact remains that from May 1917 the plaintiff had guaranteed defendant's title. If he failed to avail himself of the Bond, or to demand it from the plaintiff, it was his fault and not the plaintiff's.

During the trial of the case and in his brief, the defendant strenuously urged that the plaintiff could not claim from him more than the regular rates for such bonds which, in this case would be $262.50, and that it could not charge for attorney's fees for services rendered in connection with the bond.

The first answer to this contention is that the defendant obligated himself in writing to pay $400. The next answer is that the regular rates are for the examination of the title and furnishing the bond. But in this case there were many other services rendered to the defendant *with his consent* and performed by the plaintiff. They consisted in preparing a plan for a new subdivision of the property to be bonded, drafting and securing the passage and adoption by the City Council of Ordinances closing certain streets and dedicating others, drawing up and signing acts of exchange of properties between the City *of the defendant* and the defendant; in other words, preparing titles, translative of property

To do these things, plaintiff was put to additional expense of attorney's fees and there is no reason why it could not contract with the defendant to recover them. In doing this, it did not undertake the "practice of law", as contended by defendant; nor were the attorneys employed by it, acting as the attorneys of defendant; they were the attorneys of the plaintiff employed and paid by it, and this extra cost was a legitimate addition to plaintiff's tariff-rates for signing bonds.

Judgment affirmed.